FRANK MAGARI, Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 53272; Appeal No. 1.)

CONCETTA CALI, Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 53268; Appeal No. 2.)

GIOVANNI CALI, Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 53485; Appeal No. 3.)

JOSEPH NICOTRA et al., as Coexecutors of SAM NICOTRA, Deceased, Also Known as SAM NECOTRA, Appellants, *v.* STATE OF NEW YORK, Respondent. (Claim No. 53270; Appeal No. 4.)

Fourth Department, October 24, 1974.

*Langan, Grossman, Kinney & Dwyer* (*Hancock, Estabrook, Ryan, Shove & Hust,* by *William L. Allen, Jr.,* of counsel), for Frank Magari and others, appellants.

*Louis J. Lefkowitz, Attorney-General* (*Vernon Stuart* and *Ruth Kessler Toch* of counsel), for respondent.

DEL VECCHIO, J. Claimants appeal from a dismissal of their claims for consequential damages allegedly sustained as a result of the State's appropriation in August, 1961 of property in the City of Syracuse owned by the New York Central Railroad.

Claimants' lands, which were south of the railroad, consisted of muckland; they had been used for truck farming for many years and continued to be so used until 1968. To obtain access to their property for this purpose claimants had traveled to the southern terminus of Hasbrouck Street, a public street which ended at the north line of the railroad property, thence south across the railroad tracks. No other means of access to claimants' sites was available to them.

After the State appropriated the railroad property in 1961 it also appropriated claimants' parcels in 1968. Subsequently their claims for consequential damages from the first taking and for direct damages from the second taking were tried together. At the trial claimants sought to establish that, although used only agriculturally, the highest and best use of

their property was industrial, and that the value of the property for industrial purposes had been substantially diminished by the State's 1961 appropriation of the railroad property over which they had passed to reach their lands. The State argued that claimants never had any access to their lands for industrial use that had been interfered with by the 1961 appropriation, and its expert, although agreeing that the property had its highest value as industrial property, testified that such value depended on ownership and use by an adjoining landowner who could furnish industrial access to the sites.

Accepting the opinion expressed by the experts for both sides, the trial court found that the highest and best use of the lands was industrial in view of the character of the neighborhood and the zoning regulations, but, crediting proof adduced by the State, also found that claimants' right of access over the railroad property was originally created as a farm crossing by a conveyance in 1882, and that they had failed to show that a prescriptive right to cross the railroad for industrial use had been acquired. Additionally, the court determined that the record was inadequate to establish that claimants could have successfully negotiated with the railroad an independent agreement permitting them an industrial right of way across the railroad bed. Concluding that claimants' access was restricted to a farm crossing and that utility of the properties for industrial purposes depended upon legal access of an adjoining landowner both before and after the State's appropriation of the railroad property in 1961, the court found no change in the value of claimants' sites as industrial property by virtue of that taking and dismissed the claims arising therefrom. Substantial awards were made for the 1968 appropriation of claimants' lands themselves and those awards are not challenged by any of the parties.

With regard to the disposition of the claims predicated on the 1961 railroad property acquisition, at the trial claimants disclaimed any right under or by virtue of a farm crossing. They insisted that their right to cross the railroad was predicated exclusively on a written agreement executed in 1917 by the railroad and the Village of Eastwood, and now assert that the trial court's failure to make findings with respect to their alleged rights by virtue of that agreement requires a new trial.

By its conclusions that claimants' access was limited to a farm crossing and that the utility of their lands for industrial purposes prior to the 1961 taking depended upon legal access of an adjoining landowner the court impliedly rejected claim-

ants' contention that they had industrial use access arising out of the 1917 agreement. Because the record is complete, we can make additional findings warranted by the proof and which buttress the trial court's disposition (*Marine Midland Trust Co.* v. *Bloom,* 40 A D 2d 580; *Matter of City of Rochester* [*Wolk*], 32 A D 2d 886).

Claimants assert that under the 1917 agreement the railroad, for an annual consideration of $1, granted to the Village of Eastwood the right to construct and maintain a driveway not exceeding 14 feet in width across the roadbed of the railroad, that the City of Syracuse succeeded to the right of the village and that the city subsequently conveyed or assigned to claimants' predecessor in title the use of the driveway crossing. The instruments in the record do not support the latter assertion. Rather than transferring any interest in the railroad crossing, the deed from the City of Syracuse to claimants' purported predecessor conveyed only a strip of land *to the crossing*; it did not vest in claimants any interest in the crossing itself.

We reject claimants' argument that, despite the limiting description contained in the instrument, the city's deed must be interpreted as also transferring the city's driveway access over the railroad. If, as the trial court found, a farm crossing over the railroad property already existed, there was no necessity for any transfer of the crossing rights enjoyed by the city, and the deed has integrity as a conveyance when construed only as a grant of an access to the crossing, as it literally provides. The presence of a farm crossing is confirmed by claimants' continued and uninterrupted use of the passage across the railroad for agricultural purposes both before and after the driveway crossing had been terminated by action of the railroad in April, 1961 and up until the taking of their lands in 1968. Testimony was given at the trial that the parcel conveyed by the 1882 deed (over which the farm crossing was located) " extends into Hasbrouck Street ". The trial court's finding as to the existence of a farm crossing and its rejection of claimants' assertion of a right of access under the 1917 agreement are supported by the record and will not be disturbed.

Additionally, as claimants themselves concede, the driveway crossing created by the agreement of 1917 was specifically made and described as a terminable interest, cancelable by the railroad at any time on 30 days' notice. The privilege was in fact terminated *by the railroad* when it served a cancellation notice, as it was admittedly entitled to do, on April 27, 1961 — prior to the appropriation. Claimants would impose liability on the

State for damages they claim to have sustained by that cancellation for the reason that the cancellation was done in anticipation of the State's imminent appropriation of the railroad property and at the request of the State. No authorities have been cited, however, for the proposition that the State may be held in damages for inducing a landowner to exercise a privilege which was entirely within his power to exercise. Cases relied on by claimants hold only that an award of direct or consequential damages is not precluded by the fact that a landowner's use of his property may involve the enjoyment of a revocable license, when the license has not been revoked at the time of appropriation (*Campbell* v. *State of New York,* 32 N Y 2d 952; *Rochester Poster Adv. Co.* v. *State of New York,* 11 N Y 2d 1036; *Queensboro Farm Prods.* v. *State of New York,* 5 N Y 2d 977; *Breezemont Park* v. *State of New York,* 39 A D 2d 793; *Matter of Grade Crossing Comrs.,* 116 App. Div. 549).

Finally, whether or not claimants had a farm crossing or succeeded to any cancelable rights of the City of Syracuse under the 1917 agreement, the record strongly supports the trial court's determination that they failed to show that they could have obtained an independent agreement from the railroad for industrial access. The witness Wiedeman, who had served as real estate agent or real estate manager for the railroad in the area since 1959, testified unequivocally that the railroad would not have granted such a crossing at the location in question, and the court made a factual finding adverse to claimants on this issue. This circumstance, together with the absence of any proof either that the location had been used as an industrial crossing or that the railroad had been abandoned at the site of the taking prior to appropriation, distinguishes the present case from *Walker* v. *State of New York* (33 N Y 2d 450) and *Syracuse Ready-Mix Concrete Co.* v. *State of New York* (43 A D 2d 800), cited by claimants.

The judgments should be affirmed.

MARSH, P. J., CARDAMONE, SIMONS and GOLDMAN, JJ., concur.

Judgments unanimously affirmed without costs.